SEATS *v.* THE GEORGIA MIDLAND & GULF RAILROAD CO.

LUMPKIN, J.—Under the plain provisions of our statutes, a widow cannot recover damages from a railroad company for the killing of her husband when it appears that, by ordinary care, he could have avoided the killing, and that his death was caused by his own negligence.   Code, §§2972, 3034.                    *Judgment affirmed.*

March 16, 1891.  Argued at the last term.

Negligence.   Railroads.   Before Judge FORT.   Harris superior court.   October term, 1889.

Mrs. Seats sued the railroad company for the alleged negligent killing of her husband.   The evidence for the plaintiff, briefly stated, tended to show that Seats was killed while walking on the railroad track.   He was sixty-two years old, was quite deaf, and his eyesight was somewhat impaired.   The public road ran along by the side of the railroad, and he could have conveniently used that road.   At the place where he was struck there was room for him to have stepped off the track so as to have avoided the train.   He was killed between a blow-post and a crossing.   The engine that struck him blew for the blow-post just before reaching it, blew crossing-signal and danger-signal, and

its bell was rung before it struck him. The train was a mixed one, having six or seven freight-boxes, an accommodation-coach and baggage-car. There was ample time for Seats to have stepped off the track after the whistle blew. He could have been seen by a man on the engine for more than three hundred yards. Seats had been warned to keep off the railroad by his son-in-law. The point where he was struck was two hundred and eighty-three yards from the blow-post, and the train ran about two hundred yards after the danger-signal was blown and the bell rung, before it stopped. One witness for the plaintiff testified that there was nothing the matter with Seats except that he was deaf.

The evidence for the defendant tended to show that another person besides Seats' son-in-law had advised him to keep off the track, and he made no reply. Seats was deaf, but could hear an engine in fifty yards of him; could hear one talk if one spoke in a loud voice. His deafness was not known to the engineer and fireman. Just before reaching the blow-post the whistle was blown and the steam shut off, and the train proceeded down the track simply by its own momentum. It was two hundred and eighty-three steps from the blow-post to Seats, and three hundred and forty steps to where the train stopped from Seats, and it was two hundred and forty steps from the road crossing to Seats. The train was on time. Seats' sight was good for a man of his age. The train was running fifteen miles an hour when the engineer saw Seats one hundred and fifty or a hundred and seventy-five yards ahead. Seats was looking at the engine and then looked down. The engineer had his train under control so that he could have stopped before he got to the crossing, if necessary, and thought Seats would get off. Seats was going toward the engine, and when the engineer saw he made no effort to get from the track, he blew brakes on, put on steam-brake, re-

versed his engine and blew the danger-signal, and the fireman rang the bell; but the train could not be stopped until after it had struck him. The engineer could not see him sooner than he did, because the train was on a curve through a cut, and the engine had an extension front. The engine was a good one, and in good order. After Seats saw the engine he could easily have stepped off the track. There was a steam-brake on the engine and hand-brakes on the coaches. This train could not have been stopped after seeing Seats before striking him. Heavy freight trains, running as this one was and down grade, take five or six hundred yards to stop in. It is not customary to use air-brakes on freight trains.

The jury found for the defendant. The plaintiff excepted to the denial of a new trial.

THORNTON & CAMERON, for plaintiff.

GOETCHIUS & CHAPPELL, for defendant.